# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDRA KOBRICK,** | : | **CIVIL ACTION NO. 3:13-CV-2865** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **MATTHEW STEVENS, LAKELAND** | : | |
| **SCHOOL DISTRICT, WESTERN** | : | |
| **WAYNE SCHOOL DISTRICT, DR.** | : | |
| **MARGARET BILLINGS-JONES,** | : | |
| **THOMAS KAMEROSKI, ANDREW** | : | |
| **FALONK, and PATRICK SHEEHAN,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Alexandra Kobrick commenced this action advancing constitutional, statutory, and common law claims against her former teacher, two school districts, and various administrators. (Doc. 1). The claims arise from an approximately eight-month-long sexual relationship between Kobrick and defendant Matthew Stevens, her former music teacher and band director, which began during her senior year in high school. (See id.) Before the court is Stevens' motion (Doc. 100) for summary judgment pursuant to Federal Rule of Civil Procedure 56. We will grant in part and deny in part Stevens' motion.

# I. **Factual Background & Procedural History**[1]

Plaintiff Alexandra Kobrick ("Kobrick") attended Lakeland Junior-Senior High School from seventh through twelfth grades. (Doc. 101 ¶ 3; Doc. 138 ¶ 3). During her junior and senior years—the 2010-2011 and 2011-2012 school years, respectively—Kobrick pursued a music-oriented curriculum. (See Doc. 101 ¶ 7; Doc. 138 ¶ 7). She was also an active member of the marching, concert, and jazz bands. (See Doc. 101 ¶¶ 5-6, 8; Doc. 138 ¶¶ 5-6, 8). Kobrick intended to pursue a career in music education following graduation. (Doc. 101-2, Kobrick Dep. 68:8-69:9, 90:23-91:4, Apr. 13, 2015).

Lakeland School District ("Lakeland") hired defendant Matthew Stevens ("Stevens") as the high school's band director and music teacher sometime in 2010. (See Doc. 101 ¶ 12).[2] Kobrick met Stevens at band camp during the summer prior to the 2010-2011 school year. (Id. ¶ 15; Doc. 138 ¶ 15). Kobrick testified that she and Stevens had a "normal" student-teacher relationship during her junior year. (Doc.

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 101, 138). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[2] Kobrick indicates that this paragraph of Stevens' statement of facts is "[a]dmitted in part; denied in part," but does not specify which part thereof she denies or support her denial with contradictory record evidence. (Doc. 138 ¶ 12); see also LOCAL RULE OF COURT 56.1. The fact of Stevens' hire by Lakeland School District in 2010 is fully supported by the record.

101 ¶ 17).[3]  In advance of a student trip during the 2010-2011 school year, Stevens exchanged cell phone numbers with all band members for use in the event of an emergency.  (Id. ¶ 18).  Stevens did not call or text Kobrick using her cell phone number during her junior year.  (Id. ¶ 19).

Kobrick auditioned and was selected for the position of drum major at the end of her junior year.  (Kobrick Dep. 24:18-26:13; Doc. 101 ¶ 6; Doc. 138 ¶ 6).  In her role as drum major, Kobrick had more contact with Stevens during her senior year than other members of the band.  (Doc. 101 ¶ 21).  Stevens arranged with Kobrick's study hall teacher, Derrick Shayka ("Shayka"), for Kobrick to spend her study hall period with Stevens in the band room.  (Kobrick Dep. 194:8-195:19, 198:20-200:5; see also Doc. 101 ¶ 24; Doc. 138 ¶ 24).  Stevens also taught Kobrick's music appreciation, jazz band, and instrumental music theory courses.  (Id. ¶ 23).  Kobrick considered

---

[3] Kobrick denies this paragraph of Stevens' Rule 56.1 statement, but her reply is nonresponsive.  It is essentially a three-page description of events that took place between Stevens and Kobrick during her senior year.  (See Doc. 138 ¶ 17). Support for this statement comes from Kobrick's own testimony.  (Kobrick Dep. 364:3-5).  Kobrick reiterates this same narrative in response to paragraphs 35, 36, and 37, and incorporates it as her response to paragraphs 18, 19, 21, 22, 23, 26, 29, and 30.  (See Doc. 138 ¶¶ 18, 19, 21, 22, 23, 26, 29, 30, 35, 36, 37).  Kobrick does not specifically deny the substance of these paragraphs or cite to any contradictory evidence.  Local Rule 56.1 permits the court to deem these statements undisputed by virtue of Kobrick's noncompliant response.  Nevertheless, we have thoroughly reviewed the parties' submissions and have independently considered the entire record.  Each of the subject paragraphs is supported by the evidence—and in many cases, Kobrick's own testimony—with the exception of paragraph 26, which avers that Stevens never put himself in a position to be alone with a female student.  (Doc. 101 ¶ 26).  Stevens' guilty plea and the undisputed record of Stevens and Kobrick's sexual relationship flatly contradicts paragraph 26.

Stevens to be a "relaxed" teacher and had a "good relationship" with him during the fall semester of her senior year. (Id. ¶ 27).[4]

Stevens began texting Kobrick about topics "outside of school," including their personal lives, sometime in the fall of 2011. (Kobrick Dep. 213:13-214:21; see also Doc. 101 ¶ 28; Doc. 138 ¶ 28). Kobrick did not perceive these text messages as "flirtatious," (Doc. 101 ¶ 30), but noted that Stevens began to adopt a "friendlier" tone with her. (Kobrick Dep. 214:4-215:16; see also Doc. 101 ¶ 29). On December 31, 2011, Kobrick and Stevens exchanged text messages while Kobrick attended a party. (Doc. 101 ¶ 31; Doc. 138 ¶ 31). Kobrick texted Stevens and joked that she wished she had someone to share a New Years' Eve kiss with. (Doc. 138 ¶ 32; Kobrick Dep. 217:14-218:16; see Doc. 101 ¶ 32). Stevens replied that he would kiss Kobrick. (Doc. 138 ¶ 33; Kobrick Dep. 218:17-23; see Doc. 101 ¶ 33). Kobrick was "a little taken aback" by his response and assumed he was joking. (Kobrick Dep. 218:24-219:2). At the time, Kobrick was 17 years' old. (See Doc. 101 ¶ 1; Doc. 138 ¶ 1). Stevens was 29. (See Doc. 101 ¶ 9; Doc. 138 ¶ 9).

Kobrick's relationship with Stevens became physical in January of 2012. (Doc. 101 ¶ 36; Doc. 138 ¶ 36). In early January, she was in the band room with

---

[4] Kobrick denies this paragraph "as stated," but does not dispute a particular component thereof or identify contradictory evidence. (See Doc. 138 ¶ 27). She instead provides a generic description of the genesis of this litigation, noting that "[t]his case arises out of injuries sustained by [Kobrick] during the 2011-2012 school year," when "Kobrick was a minor student" and was "sexually abused by her band teacher." (Id.) Kobrick asserts a version of this "denial" as her principal response to 44 paragraphs of Stevens' Rule 56.1 statement. (Id. ¶¶ 20, 40, 43, 47-50, 76-96, 98-99, 103, 105-10, 114-15, 127-31). Most of these statements are supported directly by Kobrick's own deposition testimony. (Doc. 101 ¶¶ 20, 40, 43, 47, 48, 76, 78-92, 98-99, 103, 129-30). The balance are uncontradicted by Kobrick and are fully supported by the cited record evidence. (See id. ¶¶ 49, 50, 77, 93-96, 105-10, 114-15, 127-28, 131).

Stevens helping him to sort health records when he kissed her on the lips. (Doc. 101 ¶ 36; Doc. 138 ¶ 36). Kobrick was "shocked" by the contact, (Doc. 101 ¶ 37; Doc. 138 ¶ 37), but did not leave the room. (Doc. 101 ¶ 37). Later that afternoon, two of Kobrick's friends pushed Kobrick and Stevens into a uniform closet as a joke. (Id. ¶ 38; Doc. 138 ¶ 38). Stevens locked the door from the inside and began "[t]ouching [Kobrick's] private areas over [her] clothes." (Kobrick Dep. 233:21-234:11). Stevens continued touching Kobrick despite her request that he stop. (Id. at 234:12-236:8). The two eventually exited the closet. (See id. at 236:18-21). The next day, Stevens again kissed Kobrick, this time in the front of the band room. (Id. at 242:10-244:19). Stevens then led Kobrick to a practice room where he kissed her, touched her, and "stuck his hand down [her] pants." (Id. at 246:11-248:5). Kobrick asked Stevens "what he was doing" but did not protest or resist his advance; after a few minutes, the two said goodbye and Kobrick went home. (Id. at 248:6-249:9).

Kobrick did not report either incident to her parents or to administrators. (Doc. 101 ¶¶ 40-41, 47). Kobrick did not think her mother—a colleague of Stevens at the high school—would believe her because Stevens "was a teacher and he's in a place of authority." (Kobrick Dep. 228:2-229:14, 237:3-12). Kobrick testified that, although she was surprised at Stevens' conduct, she enjoyed his attention and the physical contact. (Doc. 101 ¶ 39; Kobrick Dep. 238:21-239:9). Kobrick also testified that she was not apprehensive about returning to the band room or being alone in Stevens' presence. (Doc. 101 ¶ 42; Kobrick Dep. 243:10-14).

Kobrick and Stevens thereafter began regularly engaging in other sexual contact, including oral sex. (Kobrick Dep. 251:24-253:13, 267:21-268:20; see Doc. 101

¶ 43). The relations took place in the band room—including in Stevens' office, a practice room, and a drum closet—both during and after school. (Kobrick Dep. 253:14-254:16, 255:25-256:3). On several occasions, the sexual acts occurred with other students in the band room while Kobrick and Stevens hid in a drum closet and closed the door to avoid discovery. (See id. at 255:4-257:8). Kobrick estimated that she and Stevens had sexual contact two or three times per week through the end of the school year. (Id. at 258:2-259:1, 269:20-22; see also Doc. 101 ¶ 43; Doc. 138 ¶ 43).

Kobrick graduated high school on June 1, 2012 and turned 18 one month later. (Doc. 101 ¶¶ 4, 43, 62; Doc. 138 ¶¶ 4, 43, 62). She and Stevens continued their sexual relationship during the summer following graduation. (Doc. 101 ¶ 43; Doc. 138 ¶ 43; Kobrick Dep. 285:9-17). Kobrick visited Stevens at his home ten times throughout the summer, and the pair engaged in sexual relations during five of those visits. (Kobrick Dep. 289:13-291:19). The physical aspect of the relationship ended when Kobrick left for college in mid-August of 2012. (See Doc. 101 ¶ 43; Doc. 138 ¶ 43; see also Kobrick Dep. 292:14-24). During the course of their relationship and until she left for college, Kobrick thought of Stevens as a "boyfriend."[5] (Doc.

---

[5] Kobrick cites Stevens' guilty plea in denying this fact "as stated," observing that the two were "clearly" engaged in a sexual relationship. (Doc. 138 ¶ 51). She reiterates this same response in denying "as stated" many paragraphs of Stevens' Rule 56.1 statement. (See id. ¶¶ 13-14, 52-54, 56-61, 63-68, 111, 113; see also id. ¶¶ 27, 40, 47-48, 83). Most of these statements are supported directly by Kobrick's own testimony. (See Doc. 101 ¶¶ 27, 40, 47-48, 63, 68). Viewed in proper context, Kobrick's responses are not true "denials" but instead responsive statements intended to supplement the undisputed facts as presented by Stevens.

101 ¶ 63; Kobrick Dep. 297:1-16, 394:20-5). She believed their relationship to be consensual at the time. (Kobrick Dep. 268:21-269:16, 271:25-272:15).

Kobrick and Stevens continued to exchange text messages and talk on the phone while she was away at college. (Doc. 101 ¶ 80; Kobrick Dep. 301:24-302:16, 303:25-304:22). At some point in September of 2012, Stevens called Kobrick and became pushy in asking her to touch herself while on the phone with him. (Kobrick Dep. 304:23-308:7; see also Doc. 101 ¶ 83). Kobrick refused and decided to end all communication with Stevens. (Kobrick Dep. 311:13-20; see Doc. 101 ¶ 83). Stevens texted Kobrick a handful of times thereafter, but Kobrick responded with excuses to avoid talking to him. (Kobrick Dep. 312:7-313:18; see also Doc. 101 ¶ 85).

Kobrick returned to Lakeland Junior-Senior High School in January of 2013 for an assignment which required her to observe a teacher for three days. (Kobrick Dep. 323:20-326:2; see also Doc. 101 ¶ 88). During her visit, Kobrick saw Stevens in the band room behaving flirtatiously with two younger female students. (Kobrick Dep. 330:10-334:5). Kobrick admonished Stevens "that he needed to . . . watch himself and watch how he was acting with those girls because he's going to get caught." (Id. at 334:6-13).

On February 14, 2013, Kobrick called her mother and disclosed that she had sexual relations with Stevens and that she believed him to be a "sexual predator." (Kobrick Dep. 338:19-25; see also Doc. 101 ¶ 92). Kobrick's mother contacted the Pennsylvania State Education Association and the school district's superintendent, defendant Margaret Billings-Jones ("Billings-Jones"). (See Doc. 101 ¶ 93). Billings-Jones immediately notified the district attorney's office of the allegations. (Id. ¶ 94).

Kobrick provided a written statement to the district attorney's office detailing the sexual contact with Stevens the following day. (Id. ¶ 97). Stevens was arrested on February 19, 2013 and charged with institutional sexual assault, unlawful contact with minor, and corruption of minors. Commonwealth v. Stevens, No. CP-35-CR-563-2013 (Pa. Ct. Com. Pl. Feb. 19, 2013).[6] On June 16, 2014, Stevens entered a plea of guilty to one count of corruption of minors. (Doc. 101 ¶ 111). The state court sentenced him to a term of 6 to 23 months' imprisonment. See Commonwealth v. Stevens, No. CP-35-CR-563-2013 (Pa. Ct. Com. Pl. Oct. 1, 2013).

At her mother's recommendation, Kobrick began treating with a campus counselor on the same day that she reported Stevens' conduct to authorities. (Doc. 101 ¶ 112; Kobrick Dep. 341:16-21, 342:1-19). Kobrick began suffering from anxiety after reporting the relationship and is prescribed Zoloft to manage her symptoms. (See Kobrick Dep. 362:5-363:1). Kobrick also described suffering from nightmares and crying spells, and stated that she "get[s] sick to [her] stomach" talking about the incident. (Id. at 378:12-379:10). She testified that, over the course of the two-year period preceding her deposition in this case, she treated with a counselor while at school, a social worker while at home, and her primary care physician concerning her anxiety and stress. (See Doc. 101 ¶¶ 118-22; see also Kobrick Dep. 353:6-360:4, 362:4). Kobrick also testified that she was unable to work in a classroom after this experience and had to change her music education major. (See Kobrick Dep. 90:2-91:18).

---

[6] We take judicial notice of the public docket of proceedings in the Court of Common Pleas of Lackawanna County. See FED. R. EVID. 201(b)(2).

Kobrick commenced this action with the filing of a 14-count complaint on November 25, 2013. (Doc. 1). In addition to Stevens, Kobrick asserts claims against Lakeland, Billings-Jones, and Thomas Kameroski, principal at Lakeland High School during the 2011-2012 school year, as well as Stevens' former employer, Western Wayne School District, its superintendent, Andrew Falonk, and its principal, Patrick Sheehan. (Doc. 1 ¶¶ 7-15).

Against Stevens, Kobrick asserted the following claims: in Count 1, a claim for violation of the Fourteenth Amendment right to bodily integrity and personal security and the Fourth Amendment right to freedom from unreasonable searches and seizures via 42 U.S.C. § 1983; in Count 2, a state law claim for assault; in Count 3, a state law claim for battery; in Count 8, a claim for violation of due process rights under the Pennsylvania Constitution; in Count 10, a claim for sexual and simple assault; and in Count 14, a state law claim for intentional infliction of emotional distress. Following Rule 12(b)(6) motion practice, the court dismissed Count 1 to the extent it relied on the Fourth Amendment, as well as Counts 8 and 10, finding that there is no private right of action under the state constitution nor recognized tort claims for sexual and simple assault. Kobrick v. Stevens, No. 3:13-2865, 2014 WL 4914186, at *3-9 (M.D. Pa. Sept. 30, 2014) (Mannion, J.).[7] The court otherwise allowed Kobrick's claims against Stevens to proceed to discovery. See id.

All defendants moved for summary judgment on July 15, 2016. (Docs. 100, 102, 105, 107). The motions are fully briefed and ripe for disposition. In view of the

---

[7] Judge Malachy E. Mannion presided over this case throughout the pleading stage and during discovery. Judge Mannion recused on July 10, 2017, and the matter was reassigned to the undersigned. (Doc. 142).

distinct theories of liability attending Kobrick's claims against Stevens, we address Stevens' motion (Doc. 100) separately from the school district and administrator defendants' motions.

## II.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

Kobrick's remaining claims against Stevens are fourfold: *first*, a Section 1983 claim for violation of the Fourteenth Amendment's guarantee of due process; *second*, a state law claim for battery; *third*, a state law claim for assault; and *fourth*, a state law claim for intentional infliction of emotional distress. Stevens moves for summary judgment as to all four remaining claims. The court will address each claim *seriatim*.

**A.      Section 1983 Claim**

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials.  See 42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Stevens does not dispute that he was a state actor at all times relevant herein.  We must thus determine whether Stevens' conduct deprived Kobrick of rights secured by the United States Constitution.

**1.      *Substantive Due Process Generally***

The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend XIV, § 1.  The Supreme Court of the United States interprets this clause to transcend "fair process" and proscribe certain substantive government actions without regard to the fairness of procedures implementing them.  Washington v. Glucksberg, 521 U.S. 702, 719 (1997); Daniels v. Williams, 474 U.S. 327, 331 (1986).  To prevail on a substantive due process claim, a plaintiff must prove that she has a "fundamental" liberty interest implicating Fourteenth

Amendment protection and that a defendant's conduct anent said interest was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998).[8]

Among the fundamental liberty interests protected by substantive due process is the "right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994) (citing Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 847-49 (1992)); Phillips v. Cty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). This right includes the right to be free from "invasion of . . . personal security through sexual abuse." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990). In the public school context, the Third Circuit Court of Appeals has expressly held that the Due Process Clause encompasses and defends a student's right "to be free from sexual abuse by school staff." Id. at 726-27.

What qualifies as conscience shocking is an intensely fact-specific inquiry, resolution of which varies from case to case. Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999) (citing Lewis, 523 U.S. at 847-50). It is clear that constitutional liability cannot attach for mere negligence, bad faith, or even improper motive. See Lewis, 523 U.S. at 848-49; United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003) (citations omitted). Generally, courts have defined

---

[8] Kobrick's complaint purports to assert a due process claim under the Fifth Amendment. (Doc. 1 ¶ 64). The Fifth Amendment's due process guarantee applies only to the federal government. (See Doc. 130 at 30); see also B&G Constr. Co. v. Dir., Office of Workers' Comp. Programs, 662 F.3d 233, 246 n.14 (3d Cir. 2011).

conscience shocking conduct as that which offends a sense of justice, runs afoul of the decencies of civilized conduct, or is intended to injure in a manner unjustified by any government interest. See, e.g., Lewis, 523 U.S. at 846-50 (quoting Rochin v. California, 342 U.S. 165, 172-73 (1952)).

### 2.    *Substantive Due Process & Student Sexual Abuse*

It is well-settled that a teacher's sexual abuse of a student violates that student's right to bodily integrity. Stoneking, 882 F.2d at 727. In this regard, the Third Circuit has held that such conduct "could not possibly be deemed an acceptable practice." Id. In the nearly 30 year period since Stoneking was decided, a robust anthology of district court authority continues to reinforce its conclusion. E.g., Logan v. Bd. of Educ., No. 15-499, 2016 WL 7232571, at *5 (W.D. Pa. Dec. 14, 2016) (collecting cases); Nace v. Pennridge Sch. Dist., 185 F. Supp. 3d 564, 575, 582-83 (E.D. Pa. 2016) (quoting Stoneking, 882 F.2d at 727); Doe v. Boyertown Area Sch. Dist., 10 F. Supp. 3d 637, 649-50 (E.D. Pa. 2014) (same); DiSalvio v. Lower Merion High Sch. Dist., 158 F. Supp. 2d 553, 557-58 (E.D. Pa. 2001) (same). Equally well-settled is that such abuse "can *never* further a legitimate government interest." Douglas v. Brookville Area Sch. Dist., 836 F. Supp. 2d 329, 350 (W.D. Pa. 2011) (citations omitted).

Stevens acknowledges that a student's right to bodily integrity includes the right to be free from sexual abuse perpetrated by a teacher.[9] (Doc. 110 at 7-8). He also concedes that the sexual relationship between himself and Kobrick implicates Kobrick's right to bodily integrity. (Id. at 8). These concessions notwithstanding, Stevens maintains that his relationship with Kobrick was consensual, precluding a finding that his conduct was so egregious as to shock the conscience. (See id. at 8-15). In other words, he suggests that a minor's consent to sexual relations with a teacher categorically negates Section 1983 liability. (See id.)

Kobrick testified that she was initially confused, shocked, and scared by the sexual contact, but indicated that she later came to enjoy Stevens' attention. (See, e.g., Kobrick Dep. 224:22-225:2, 271:25-272:8, 377:16-22). She denied that Stevens ever forced or coerced her to participate in the relationship. (Id. at 268:21-269:16, 271:25-272:15). She explained that, at the time, she believed her participation in the relationship to be voluntary and consensual. (See id.; see also id. at 382:7-12). She testified that, with hindsight, it became clear that Stevens had taken advantage of her. (Id. at 382:13-383:22).

---

[9] Stevens intimates that Stoneking applies to "sexual assault," but not to other forms of sexual abuse. (Doc. 110 at 7 n.2). He notes that Pennsylvania law defines "sexual assault" as "sexual intercourse or deviate sexual intercourse . . . without. . . consent," 18 PA. CONS. STAT. § 3124.1, and emphasizes that he and Kobrick did not engage in sexual intercourse. (Doc. 110 at 7 n.2). Stoneking did not narrow its holding in the manner Stevens claims; per contra, the court spoke broadly of sexual abuse, sexual molestation, and "various sexual acts." Stoneking, 882 F.2d at 722, 726-27. Although case law has subsequently limited Stoneking's holding to physical rather than verbal abuse, see, e.g., Nace, 185 F. Supp. 3d at 575, courts have not fixed limits on the type of physical sexual abuse to which the rule should apply.

Stevens' argument tasks the court to address a threshold question of law: whether a minor student has the *capacity* to consent to a sexual relationship with her teacher. In this regard, we find Chancellor v. Pottsgrove School District, 501 F. Supp. 2d 695 (E.D. Pa. 2007)—a case with striking parallels to this matter—to be particularly instructive. In Chancellor, a high school band teacher argued that his 10-month-long sexual relationship with the 17-year old drum major was consensual and thus did not violate her right to bodily integrity. Id. at 698-99, 713. The student in Chancellor testified, as Kobrick did here, that the intimate relations with her band teacher were "consensual." Id. at 703, 705.

The court rejected the teacher's claim that this testimony was dispositive. Id. at 705. The appropriate inquiry, the court explained, is not whether a student consents, but whether the student has legal capacity to do so. See id. In finding that a minor student cannot, as a matter of law, consent to sexual relations with a teacher, the court underscored two factors: *first*, that the nature of a student-teacher relationship creates an innate power disparity which renders true consent unattainable, and *second*, that state law criminalizes such conduct notwithstanding consent. See id. at 705-06. Hence, the court held that a high school student does not have the capacity to consent to sexual relations with a teacher. Id. at 708.

This court adopted Chancellor's holding in the context of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).[10] See E.N. v. Susquehanna

[10] The Chancellor court conducted its consent analysis in the context of examining the student's claim under Title IX but later observed that the holding applied with equal force to the student's claim against her teacher under Section 1983. See Chancellor, 501 F. Supp. 2d at 705-08, 713.

Twp. Sch. Dist., No. 1:09-CV-1727, 2011 WL 3608544, *13 n.16 (M.D. Pa. July 5, 2011),

adopted by 2011 WL 3608490 (M.D. Pa. Aug. 16, 2011) (Conner, J.).  Therein, we

agreed that even if the student "voluntarily participates in sexual activities with the

teacher," the sexual contact is nonetheless "unwelcome as a matter of law."  Id.

Beyond the Third Circuit, the few courts to address this question have resolved that

voluntary or "consensual" sexual relations between student and teacher can violate

a student's right to bodily integrity.  See, e.g., Doe v. Taylor Indep. Sch. Dist., 15

F.3d 443, 447-49, 451 (5th Cir. 1994); Henry v. Toups, No. 08-939, 2010 WL 3398857,

at *2, 7 (E.D. La. Aug. 23, 2010); Craig v. Lima City Sch. Bd. of Educ., 384 F. Supp.

2d 1136, 1146-47 (N.D. Ohio 2005); Doe v. Beaumont I.S.D., 8 F. Supp. 2d 596, 606

(E.D. Tex. 1998); see also Doe v. Fournier, 851 F. Supp. 2d 207, 220 (D. Mass. 2012).

Stevens rejoins with authority that is largely inapposite.  He first cites to

Douglas v. Brookville Area School District, 836 F. Supp. 2d 329 (W.D. Pa. 2011),

for the proposition that the test for Section 1983 liability is whether the minor

student consented to the relationship.  (Doc. 110 at 9-10 (citing Douglas, 836 F.

Supp. 2d at 352 & n.19)).  Stevens ascribes more weight to Douglas than it is due.

The court in Douglas expressed concern that Chancellor might "essentially render

some sexual relationships between consenting adults" unconstitutional.  Douglas,

836 F. Supp. 2d at 352 n.19.  This commentary notwithstanding, the court did not

actually decide that consent is a complete defense.  See id. at 352-53.  Because the

teacher in question failed to respond to the student's Rule 56 motion, see id., the

court granted the motion as unopposed.  See Douglas v. Hetrick, No. 10-1087, 2012

WL 94540, at *2 (W.D. Pa. Jan. 11, 2012).  Thus, despite expressing hesitation about

the constitutional impact of a student's consent, the court ultimately granted summary judgment to that student.

The residual authority cited by Stevens merits only brief discussion. Doe v. Round Valley Unified School District, 873 F. Supp. 2d 1124 (D. Ariz. 2012), involved a sexual relationship between *two students*. See id. at 1128. The court observed that "consensual intrusions . . . do not violate the Constitution," but did not address the question of capacity to consent at issue here. Id. at 1130. In Lee *ex rel.* Lee v. Borders, 764 F.3d 966 (8th Cir. 2014), a resident of a mental health facility raised a bodily integrity claim based on sexual abuse by a staff member, and the district court put the question of consent to a jury. Id. at 969-70, 972. The appellate court held that with capacity to consent at issue, the district court did not abuse its discretion by instructing the jury on both consent and capacity. See id. at 972-73. Contrary to Stevens' claim, Lee supports a conclusion that certain plaintiff groups may lack capacity to consent to sexual relationships. See id. at 972. In Cox v. McVickers, No. 1:12-CV-911, 2014 WL 221817 (M.D. Ala. Jan. 21, 2014), the court was "unconvinced" that an adult inmate could *never* consent to sexual relations with a prison official solely by virtue of the custodial relationship and thus left the issue of consent for a jury to decide. Id. at *1-2. These authorities are illuminative of consent generally but inapposite as pertains capacity to consent between minor student and teacher.

We agree with the holding in <u>Chancellor</u> that a minor student is incapable of consenting to sexual relations with her teacher.[11]  The student-teacher relationship is defined by a power dynamic which inherently renders the student vulnerable to coercion by opportunistic predators.  The student's ability to provide meaningful consent is precluded by the authority a teacher wields over him or her.  These principles are borne out by proof that Stevens did in fact use his authority over Kobrick to facilitate sexual relations with her, formally arranging for her to spend every study hall alone with him in his office.  (Kobrick Dep. 194:8-195:19, 198:20-200:5).

Kobrick—as a minor and as Stevens' student for the first six months of their "relationship"—could not consent to Stevens' sexual advances.  We have little difficulty concluding that a jury might reasonably find Stevens' conduct to be "so

---

[11] We note our disagreement with certain *dicta* in <u>Douglas v. Brookville Area School District</u>, 836 F. Supp. 2d at 352 n.19, which seemed to misapprehend the essence of <u>Chancellor</u>.  The latter did not suggest that consensual relations between an adult teacher and an adult student necessarily violate the student's substantive due process rights, and nor do we.  <u>See id.</u>  <u>Chancellor</u> held only that the custodial aspect of the student-teacher relationship combined with the student's status as a minor to preclude the student's capacity to consent.  <u>See Chancellor</u>, 501 F. Supp. 2d at 706 (identifying analogues concerning both positions of authority and age and observing that case before it "encapsulates both of these lines").  The fact remains that Kobrick was not an adult at the time that Stevens pursued a relationship with her.  It is sufficient for purposes of this case to hold that a *minor* cannot consent to sexual contact with her schoolteacher.  <u>But cf.</u> <u>Henry</u>, 2010 WL 3398857, at *2, 7 (concluding that due process protects all students from sexual abuse by teachers, even those who have attained age of majority); <u>see also</u> <u>Blue v. District of Columbia</u>, 850 F. Supp. 2d 16, 25 (D.D.C. 2012) (citing <u>Henry</u> and assuming without deciding that consenting 18-year-old student can pursue a substantive due process claim following sexual relationship with teacher), <u>aff'd</u>, 811 F.3d 14, 18 (D.C. Cir. 2015).  For this same reason, we reject Stevens' contention that proof of a minor student's consensual sexual relations with another minor student evinces the minor's capacity to consent to sexual contact with an adult teacher.  (Doc. 110 at 15).

egregious, so outrageous" as to shock the contemporary conscience, <u>Lewis</u>, 523 U.S. at 847 n.8, and we will deny Stevens' motion for summary judgment on Count 1.

### B. Assault and Battery Claims

Pennsylvania law defines battery as an intentional "harmful or offensive contact with the person of another." <u>C.C.H. v. Phila. Phillies, Inc.</u>, 940 A.2d 336, 340 n.4 (Pa. 2008) (quoting <u>Dalrymple v. Brown</u>, 701 A.2d 164, 170 (Pa. 1997)). Assault, by contrast, is an act which is intended to and succeeds in placing an individual in imminent apprehension of a battery. <u>Brownstein v. Gieda</u>, 649 F. Supp. 2d 368, 375 (M.D. Pa. 2009) (quoting <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (1994); <u>Glass v. City of Phila.</u>, 455 F. Supp. 2d 302, 365-66 (E.D. Pa. 2006)). Touching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established. <u>See</u> <u>Nace</u>, 185 F. Supp. 3d at 584 (quoting <u>Cooper *ex rel.* Cooper v. Lankenau Hosp.</u>, 51 A.3d 183, 191 (Pa. 2012)); <u>Brownstein</u>, 649 F. Supp. 2d at 375 (quoting <u>Montgomery v. Bazaz-Sehgal</u>, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999)).

Stevens contends that he did not intend to cause Kobrick injury, he did not attempt to put her in fear of bodily injury, and Kobrick consented to the touching. (Doc. 110 at 19-20). We have already concluded that the combination of Kobrick's status as a minor and the naturally coercive student-teacher relationship rendered Kobrick incapable of consent as a matter of law. <u>See</u> *supra* at 14-19. Consequently, because Kobrick could not truly acquiesce to Stevens' sexual advances, her ostensible consent is no defense to the assault and battery claims. <u>Nace</u>, 185 F. Supp. 3d at 584-85. Because the contact was nonconsensual, Kobrick need not

prove physical injury or intent to cause same.  See id. at 584; Brownstein, 649 F.

Supp. 2d at 375.  Accordingly, we will deny Stevens' Rule 56 motion as to Counts

2 and 3.

### C.  Intentional Infliction of Emotional Distress Claim

A claim for intentional infliction of emotional distress requires proof that:

 (1) the defendant's conduct was extreme and outrageous; (2) the conduct caused

the plaintiff severe emotional distress; and (3) the defendant acted intending to

cause such distress or with knowledge that same was "substantially certain" to

occur.  Brown v. Muhlenberg Twp., 269 F.3d 205, 217-18 (3d Cir. 2001) (quoting

RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (AM. LAW. INST. 1965)).[12]

Whether conduct could reasonably be regarded as extreme and outrageous is

a threshold inquiry for the court's determination.  M.S. ex rel. Hall v. Susquehanna

Twp. Sch. Dist., 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014) (citing Reimer v. Tien, 514

A.2d 566, 569 (Pa. Super. Ct. 1986)).  Stevens remonstrates that his conduct was not

"outrageous" because his relationship with Kobrick was consensual.  As previously

stated, the court concludes otherwise.  Stevens' pursuit of sexual relations with a

minor student is both egregious and outrageous, and Kobrick was incapable of

consenting to the contact.  See supra at 14-19; see also Chancellor, 501 F. Supp. 2d

---

[12] The Pennsylvania Supreme Court has not yet explicitly recognized the tort
of intentional infliction of emotional distress.  See Taylor v. Albert Einstein Med.
Ctr., 754 A.2d 650, 652 (Pa. 2000).  The Third Circuit has predicted that the state's
high court will ultimately adopt the Restatement (Second) of Torts' formulation.
Williams v. Guzzardi, 875 F.2d 46, 50 (3d Cir. 1989); Chancellor, 501 F. Supp. 2d at
710 (citing Williams, 875 F.2d at 50).

at 713-14. Thus, a reasonable jury could find for Kobrick on the first element of her claim.

Stevens also asseverates that Kobrick has not proven a sufficient degree of emotional distress and, in particular, that any emotional harm has not manifested in physical symptoms. (See Doc. 110 at 30-34). Pennsylvania law requires a plaintiff to prove that she suffered physical symptoms as a result of the emotional distress. See M.S., 43 F. Supp. 3d at 430 (quoting Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)). Both the emotional harm and the accompanying physical symptoms must be substantiated by objective medical evidence. Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989) (citing Williams , 875 F.2d at 52; Kazatsky v. King David Mem'l Park, 527 A.2d 988, 995 (Pa. 1987)). Failure to adduce competent medical evidence is fatal to a plaintiff's claim for intentional infliction of emotional distress. See Martin v. City of Reading, 118 F. Supp. 3d 751, 768-69 (E.D. Pa. 2015) (quoting Bolden v. SEPTA, 21 F.3d 29, 35 (3d Cir. 1994); Kazatsky, 527 A.2d at 995).

Kobrick has not supplied the court with medical records substantiating her symptoms, diagnoses, or treatment. (See generally Doc. 138). She relies exclusively on her deposition testimony to support her emotional distress claim. (See Doc. 139 at 23-24). The limited records submitted by the defense establish diagnoses of depressive disorder and anxiety but do not reflect severe distress or attendant physical symptoms. In treatment notes from December of 2013 through June of 2014, social worker Rita Tinsley observed that Kobrick feels "tremendous shame" as a result of the relationship, has "conflicting feelings" about what happened, is

"anxious about running into" Stevens, and was "anxious" about testifying at his criminal trial. (Doc. 101-19). Jolene Meisner, Kobrick's counselor at school, noted in November of 2015 that Kobrick described "stress and anxiety" about talking to an independent psychiatric examiner for purposes of this case.[13] (Doc. 101-21 at 2). These notes do not opine on the severity or the cause of any emotional distress. The Rule 56 record is otherwise silent as to Kobrick's claim of severe emotional harm. Given the dearth of objective medical evidence, the court is compelled to grant summary judgment to Stevens on Count 14 of Kobrick's complaint.

## IV.   Conclusion

The court will grant in part and deny in part Stevens' motion (Doc. 100) for summary judgment. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      September 1, 2017

---

[13] The independent psychiatric examiner, Gladys S. Fenichel, M.D., opined that "there is no indication for psychiatric or psychological treatment for the issues identified in the [c]omplaint" and that Kobrick "does not have any disability related to the issues identified in the [c]omplaint." (Doc. 101-14 at 17). Dr. Fenichel refers to an expert report issued by a separate forensic evaluator to Kobrick's former counsel which purportedly concludes that Kobrick suffers from post-traumatic stress disorder as a direct result of Stevens' conduct. (See id. at 16). Kobrick has not provided this report to the court; hence, we cannot rely on it for purposes of the instant motion.